**AUTO SPECIALTIES MFG. CO.**
v.
**HANDLER MOTOR SUPPLY CO.**
Civ. No. 668.

United States District Court,
N. D. Iowa, E. D.
July 23, 1954.

Moore, Prangley & Clayton, Chicago, Ill., Harris, Van Metre & Buckmaster, Waterloo, Iowa, for plaintiff.

Samuel J. Stoll, Jamaica, N. Y., Swisher, Cohrt & Swisher, Waterloo, Iowa, for defendant.

GRAVEN, District Judge.

### Findings of Fact

1. The plaintiff, Auto Specialties Manufacturing Co., is a corporation duly organized and existing under and by virtue of the laws of the State of Michigan. Its principal place of business is in the City of St. Joseph, Berrien County, Michigan. Among its activities is the manufacture and distribution of automobile jacks.

2. The defendant Handler Motor Company is a corporation duly organized and existing under and by virtue of the laws of the State of Iowa. Its principal place of business is in the City of Waterloo, Black Hawk County, Iowa. Among its activities is the retail sale of automotive accessories.

3. Samuel S. Koloden is a resident of New York City, New York, doing business under the trade name of Hyde Park Iron Works Company. His principal place of business is in the Borough of Brooklyn. Among his activities is the manufacture and distribution of automobile jacks.

4. On March 3d, 1953, pursuant to an application filed on December 3d, 1948, United States Letters Patent No. 2,630,295 was issued to Millard B. Lucker for an "automobile jack." The plaintiff is the sole owner of said Letters Patent as the assignee of Millard B. Lucker. That patent is in evidence as Exhibit "A".

5. The plaintiff brings this action under the patent laws of the United States. Diversity of citizenship exists between

the plaintiff and the defendant, and the amount in controversy, exclusive of interest and costs, is in excess of $3,000.

6. The plaintiff charges the defendant with infringement of United States Letters Patent No. 2,630,295, and that patent is the patent in suit.

7. Sometime prior to September 16th, 1953, the defendant purchased 36 jacks from Samuel S. Koloden. On September 16th, 1953, the defendant sold one of those jacks at retail at its place of business in the City of Waterloo, Iowa. That jack is the accused jack and is in evidence as Exhibit "C".

8. Patent No. 2,630,295 contains a number of claims. The plaintiff relies upon claims Nos. 3 and 4 of that patent. Claim 3 is as follows:

"An automobile bumper jack, comprising an elongated strut having opposed sides and an integral back wall disposed to provide a generally U-shaped cross section and having forwardly exposed relatively narrow longitudinal free edges bounding an elongated frontal opening, means for supporting said U-shaped strut in an upstanding position, an elongated screw of relatively small diameter as compared to interior cross sectional dimensions of the U-shaped strut, thrust bearing means at the upper end of the U-shaped strut for rotatably and pendantly supporting said screw with the screw positioned substantially completely within the U-shaped strut and with the lower end of the screw free for lateral movement relative to the U-shaped strut, means connected with the upper end of the screw for turning the screw, load lifting means, said load lifting means including a screw engaging member disposed within said U-shaped strut and threadedly engaging said screw and movable longitudinally of the screw upon rotation of the screw, said screw engaging member having transverse cross sectional dimensions less than the interior cross sectional dimension of said U-shaped strut to permit movement of said load transmitting means laterally from side to side and from front to back of the U-shaped strut, plate means rigidly carried by, and extending laterally in opposite directions from said screw engaging member and overlying said free edges for engagement with the free edges, said plate means also extending for a substantial distance longitudinally of said U-shaped strut to cover a substantial portion of said frontal opening of the U-shaped strut and a bumper engaging member extending forwardly of said plate means and below the upper end of said plate means so that the portion of the plate means above the bumper engaging member prevents foreign objects from entering the U-shaped strut."

Claim 4 is as follows:

"An automobile bumper jack, comprising an elongated strut consisting of opposed side walls and an integral back wall disposed to provide a generally U-shaped cross section and having forwardly exposed relatively narrow longitudinal free edges, means including a support leg for supporting said U-shaped strut in a generally upstanding operative position inclined from the vertical, means pivotally connecting said U-shaped strut and said support leg adjacent their upper ends so that said strut and leg may be folded together or may be opened, an elongated screw of relatively small diameter as compared to interior cross sectional dimensions of said U-shaped strut, said screw being mounted within said U-shaped strut, thrust bearing means adjacent the upper end of said U-shaped strut for rotatably and pendantly supporting said screw while maintaining said screw from movement longitudinally of said U-shaped strut, the lower end of said screw being loosely disposed within said U-shaped strut and movable laterally relative thereto, load

lifting means, said load lifting means including a screw engaging member disposed within said U-shaped strut and threadedly engaging said screw and movable longitudinally of said screw upon rotation of the screw, said screw engaging member having exterior transverse cross sectional dimensions less than the interior cross sectional dimensions of said U-shaped strut to permit movement of said load transmitting means laterally from side to side and from front to back of the U-shaped strut, a pair of elongated flange means rigidly mounted on and movable with said screw engaging member and extending outwardly in opposite directions from said screw engaging member and overlying said free edges of the U-shaped strut and extending laterally beyond said opposite sides of the U-shaped strut for holding said load transmitting member from turning relative to said screw and for maintaining said screw engaging member substantially out of frictional contact with the inner surfaces of the back wall of said U-shaped strut regardless of the position of the screw engaging member relative to the opposite side walls of the U-shaped strut, a load engaging member rigidly connected to said screw engaging member and extending forwardly of said U-shaped strut, and actuating means connected with the upper end portion of said screw for turning the screw."

9. The defendant gave notice that it would rely upon the following patents as prior and anticipatory at the trial:

### United States Patents

| No. | | | | |
|---|---|---|---|---|
| No. 251,415 | Crecelius | December | 27th, | 1881 |
| No. 1,424,952 | Townsend | August | 8th, | 1922 |
| No. 1,795,391 | Hansen | March | 10th, | 1931 |
| No. 1,810,726 | Pierce | June | 16th, | 1931 |
| No. 2,043,479 | Greiman | June | 9th, | 1936 |
| No. 2,156,930 | Wallace | May | 2nd, | 1939 |
| No. 2,160,543 | Gormley | May | 30th, | 1939 |
| No. 2,274,794 | Kitchen | March | 3rd, | 1942 |
| No. 2,590,970 | Jensen | April | 1st, | 1952 |
| No. 2,600,276 | Smith | June | 10th, | 1952 |
| No. 2,608,382 | Palka | August | 26th, | 1952 |
| No. 2,609,178 | Kearful | September | 2nd, | 1952 |

### Foreign Patents

| No. | | | | |
|---|---|---|---|---|
| No. 404,650 (German) | Ragma | October | 22nd, | 1924 |
| No. 637,310 (French) | Fretz | April | 27th, | 1928 |

All of these patents except the Pierce, Smith and Kearful patents were introduced into evidence.

The plaintiff is the owner of Greiman Patent No. 2,043,479. Samuel S. Kolod* en owns Wallace Patent No. 2,156,930 and Kitchen Patent No. 2,274,794.

10. Jacks which were and are in common and general use are the scissors type, the ratchet type, the friction type, the hydraulic type, and the screw type. The automobile jack described in the patent in suit is of the screw type, and the accused jack is of the screw type.

11. Commencing with the use of automobiles, there arose a demand for a jack suitable for the raising of them for the purpose of changing tires and wheels and making repairs. Jacks of several different types were made to meet that demand. For a considerable period of time following the common and general use of automobiles, the automobiles were so constructed that they

could be raised by inserting a jack under them. Such jacks were in general comparatively short in height even when extended and their bases provided fairly stable support for raised automobiles. When the automobile manufacturers commenced to manufacture automobiles which were low slung and which had low fender skirts, the types of automobile jacks then being made were not well adapted to the raising of such automobiles. The kind of jack best adapted to the new design of automobiles seemed to be the so-called bumper jack. That kind of jack, as its name indicates, engages a bumper. To raise an automobile to the desired height by a jack engaging a bumper results in the jack being much more extended when the desired height is reached than is a jack which raises an automobile from underneath the automobile. A bumper jack lifts the automobile at the extreme rear end. Because of those features, it was soon found that vertical, upright, bumper jacks which had but a single supporting base tended to be unstable.

12. The desired stability could to a considerable extent be achieved by inclining the lifting leg of the jack from the vertical and by adding one or more legs to support it in its inclined position. A jack which is inclined from the vertical is frequently referred to as an inclined jack. A jack which stands upright is commonly referred to as a vertical, upright jack.

13. The patent in suit describes a screw type bumper jack. For convenience, the jack described will be referred to as plaintiff's jack. The plaintiff introduced into evidence as Exhibit "H" a jack which it claimed conforms to the patent. The plaintiff's jack is of the bipod type. It has a front, or lifting, leg and a rear, or bracing, leg. The front leg consists of a U-shaped channel iron which houses a screw. The free, or open, edges of the channel iron are to the front. A bumper is engaged by means of a lifting hook, or saddle, attached to a bracket. The bracket fits into the channel. It is so engaged that it rests upon the open edges of the channel iron. The bracket fits over the open edges in such a manner as to hold it in its proper position. The screw housed in the channel passes through a threaded bore in the lifting hook bracket. The lifting hook bracket is raised and lowered by turning the screw with a pivoted handle located near the top of the lifting leg. The weight of the load engaged by the lifting leg is borne by the free, or open, edges of the channel iron rather than by the beam or bottom of the channel iron or the screw. The rear, or supporting, leg is tubular. It is pivotally secured to the front, or lifting, leg. There is a sheet metal folding cross brace between the front and rear legs which folds against the front leg. That cross brace limits the outward movement of the rear leg. Both the lifting leg and the supporting leg have folded flange bases.

14. Lifting jacks of various types and kinds and the elements thereof have been long and commonly known. The lifting of loads by screw type jacks both upright and inclined, the raising and lowering of a lifting bracket by means of a threaded bore, the support of an inclined jack by one or more supporting legs, folding cross-braces, and U-shaped channel irons in which brackets are moved up and down by a screw are all elements which are old and, in some cases, ancient. It is apparently the claim of the plaintiff that having the lifting bracket bear against the free, or open, front edges of the channel constituted invention.

15. The patent in suit is a combination patent. It is an aggregation of old elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them. The arrangement and form of its elements is a matter of engineering choice. The matter of whether a lifting bracket in an inclined screw type jack should bear on the open edges of a U-shaped channel iron housing the screw or on the bottom of such channel iron is a matter of engineering choice. The patent in question is lacking in invention because

of the state of the prior art. The state of the art prior to the patent in question was such that one skilled in the art before him could have constructed the jack of United States Letters Patent No. 2,-630,295.

16. The circumstances are not such as to justify the award of an attorney fee to the defendant.

### Conclusions of Law.

1. That this Court has jurisdiction of the subject matter of this action and the parties thereto.

2. That United States Letters Patent issued to Millard B. Lucker on March 3d, 1953, and of which the plaintiff is the assignee, is invalid as lacking in invention.

3. That no award of an attorney fee should be made to the defendant.